UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in<br><br>Anchorage, a Municipal Corporation<br><br>              Plaintiff,<br>   v.<br><br>Integrated Concepts & Research Corp., et al.,<br><br>              Defendants. | Case No: 14-mc-_____ |

### MOTION OF U.S. DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION TO QUASH SUBPOENA *DUCES TECUM* OF PND ENGINEERS, INC., AND TO ENTER A PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF EVIDENCE 502(d)

Pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure and Rule 7 of this Court's Local Rules, the United States Department of Transportation, Maritime Administration (MARAD), moves to quash the subpoena *duces tecum* served on MARAD by PND Engineers, Inc., or to modify the subpoena by limiting its scope to those documents exclusively in MARAD's possession. Alternatively, if the court denies MARAD's motion and orders MARAD to comply with the portions of the subpoena to which it objects, MARAD moves for reasonable compensation to protect it from significant expense pursuant to Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure. MARAD also requests that the court enter a protective order pursuant to Fed. R. Evid. 502(d), stating that MARAD's disclosures in response to this subpoena do not waive the attorney-client privilege in this or any other federal or state proceeding. A

1

proposed protective order is attached to this motion. The grounds for this motion are set forth in the attached memorandum of law. Counsel for PND have indicated that they oppose this motion.

Respectfully Submitted,

RONALD C. MACHEN JR, D.C. BAR # 447889
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Attorneys for MARAD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in <br><br> **Anchorage, a Municipal Corporation** <br><br> Plaintiff, <br> v. <br><br> **Integrated Concepts & Research Corp., et al.,** <br><br> Defendants. | Case No: 14-mc-_____ |

## MEMORANDUM IN SUPPORT OF THE MOTION OF U.S. DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION TO QUASH SUBPOENA *DUCES TECUM* OF PND ENGINEERS, INC.

The United States Department of Transportation, Maritime Administration (MARAD), submits this memorandum in support of its motion to quash the subpoena issued by PND Engineers, Inc. (PND). The subpoena issued from the United States District Court for the District of Alaska as part of litigation to which the United States is not a party, styled *Anchorage, a Municipal Corporation v. Integrated Concepts & Research Corp., et al*, Case No. 3:13-cv-00063-SLG (D. Alaska). PND is a defendant in that action. MARAD moves to quash on the grounds that the subpoena is unduly burdensome and fails to allow a reasonable time to comply. Alternatively, if the court denies MARAD's motion and orders MARAD to comply with the portions of the subpoena to which it objects, MARAD moves for reasonable compensation to protect it from significant expense pursuant to Rule 45(d)(2)(B)(ii).

## STATEMENT PURSUANT TO LOCAL RULE 7(m)

Counsel for MARAD has had several telephonic conferences and email conversations with counsel for PND to determine whether PND opposes this motion and to attempt in good faith to narrow the areas of disagreement with respect to the issues addressed in this motion. However, counsel for MARAD and PND have been unable to reach a resolution regarding the scope of the documents requested. Based on those communications, it is MARAD's understanding that PND opposes this motion to the extent the motion seeks to quash and/or modify the subpoena with respect to documents that are not solely in the possession of MARAD. As to those documents sought by the subpoena that are solely in the possession of MARAD, MARAD has objected to making such a production until this Court issues a Protective Order pursuant to Fed. R. Evid. 502(d). MARAD has attached a proposed Protective Order to this motion. It is MARAD's understanding that PND objects to this Court issuing an order pursuant to Fed. R. Evid. 502(d), and believes that any such order should be issued by the federal district court in Alaska.

## STATEMENT OF FACTS

### A.   Port of Anchorage Intermodal Expansion Project

The Port of Anchorage Intermodal Expansion Project (Project) began in 2003 as an effort to expand and modernize the Port of Anchorage, Alaska. MARAD and the Municipality of Anchorage (Anchorage) entered into a Memorandum of Understanding in 2003 (2003 MOU) to begin the planning stages of the project, and Congress authorized MARAD to administer the project funds in the 2005 Surface Transportation Reauthorization legislation, SAFETEA-LU, Pub. L. No. 109-59, § 10205, 119 Stat. 1144 (2005). Pursuant to the 2003 MOU, MARAD

contracted with Integrated Concepts & Research Corporation (ICRC) as the prime contractor for the Project.

PND was one of ICRC's subcontractors on the Project, responsible for professional engineering services related to the Project's design and construction. PND designed the new dock structures using Open Cell Sheet Pile® technology, a proprietary system owned by PND. Pile driving for the first part of the new dock structure began in June 2008. The construction subcontractors began reporting difficult driving conditions almost immediately, however, and work was halted in the fall of 2010 for inspection and an overall Project assessment.

As part of the Project assessment, in August 2011 MARAD signed an Interagency Agreement (IAA) with the United States Army Corps of Engineers (Army Corps). Under this Agreement, the Army Corps contracted with CH2M Hill, a national engineering firm, to conduct an independent analysis of PND's Open Cell Sheet Pile® design and its suitability for the Project location (Suitability Study). Pursuant to the IAA, the Army Corps was responsible for the procurement process, overall government management of the Suitability Study, and all communication with CH2M Hill, Anchorage, and other interested parties. The Army Corps received and consolidated all suggested edits that MARAD and Anchorage proposed to the Suitability Study drafts before transmitting the final proposed edits to CH2M Hill.

CH2M Hill conducted the Suitability Study throughout 2012, releasing a Final Report in February 2013. The Suitability Study concluded that the project design was unsuitable for the location because, among other issues, it did not meet the adequate standards for safety. Moreover, the design did not meet the global stability and seismic displacement requirements for the active seismic conditions at the Project site. The Suitability Study also concluded that

virtually all of the damaged sections of the project were irreparable. There has been no construction on the Project site since 2010, and MARAD's role in the Project ended in 2012.

### B. District of Alaska Litigation

On March 8, 2013, Anchorage filed a complaint in Alaska state court against ICRC, PND, and CH2M Hill Alaska, Inc.,[1] seeking damages for breach of contract, negligence, and professional negligence. The defendants subsequently removed the action to federal court, where it is now pending.[2] On March 3, 2014, the court in the District of Alaska denied a motion to dismiss for failure to state a claim filed by ICRC and joined by PND and CH2M Hill, and the case has proceeded to the discovery stage.

### C. PND's Document Request

On August 28, 2014, counsel for PND sent to MARAD a request for documents pursuant to the Department of Transportation's *Touhy* regulations, 49 C.F.R. part 9.[3] PND requested eleven categories of documents, which together effectively requested copies of any and all records in the custody of MARAD relating to the Suitability Study. MARAD responded in writing on September 29, 2014, stating that it intended to provide certain responsive documents, but that it would require more time to respond fully. MARAD also noted that the majority of the

---

[1] The defendant in the District of Alaska litigation is CH2M Hill Alaska, Inc., apparently a wholly-owned subsidiary of CH2M Hill, Inc., which was the entity that performed the Suitability Study. According to publicly available information, although registered as different corporations in different states, CH2M Hill Alaska, Inc., and CH2M Hill, Inc., share the same physical address in Englewood, Colorado, and the two corporations share officers. This memorandum will refer to both entities simply as "CH2M Hill."

[2] On February 28, 2014, Anchorage also filed suit against MARAD in the United States Court of Federal Claims alleging that MARAD breached the 2003 MARAD-Anchorage Memorandum of Understanding and a succeeding 2011 Memorandum of Agreement.

[3] PND's request refers to 49 C.F.R. part 13, but this is a mistake. There is no part 13. MARAD treated the request the same as if it had properly referenced 49 C.F.R. part 9.

documents PND requested were also in the possession of other parties to the District of Alaska litigation, and accordingly MARAD requested that PND reduce the scope of its request to documents exclusively in MARAD's possession. Finally, MARAD requested the payment of fees in accordance with the Department's *Touhy* regulations and FOIA fee schedule at 49 C.F.R. § 7.42.

Subsequently, MARAD and PND's counsel had numerous telephonic and email exchanges, attempting to reach agreement regarding the document request. Ultimately, the parties were unable to reach agreement regarding the scope of the request or the payment of fees. MARAD has offered to produce all documents related to the Suitability Study that are exclusively in its possession provided that this Court issues a Protective Order pursuant to Fed. R. Evid. 502(d). PND, however, has been unwilling to withdraw its request for documents it can equally obtain from other parties to the District of Alaska litigation or from the Army Corps. PND has also refused MARAD's request for the payment of fees beyond a small per-page duplication fee.

In light of the disagreements between PND counsel and MARAD, on October 17, 2014 PND served MARAD with a subpoena *duces tecum*, which seeks the same documents as PND's August *Touhy* request. On October 22, 2014, PND served an updated subpoena with an amended place of production.[4] Ex. 1. The subpoena commands MARAD to produce all responsive documents by November 3, 2014. MARAD responded with written objections on October 31, 2014. Ex. 2. MARAD has stated that it will produce documents responsive to Requests E-G and I, and that it will produce documents responsive to the remaining Requests to

---

[4] PND substituted Washington, DC, for Seattle, WA, as the place where production is commanded.

the extent that the documents are exclusively in its possession, provided that this Court issues a Protective Order pursuant to Fed. R. Evid. 502(d). MARAD continues to maintain its objection to PND's demand for documents that are also in the possession of parties to the District of Alaska litigation or the Army Corps.[5]

MARAD has identified approximately 80 GB of data in its possession that relate to the Suitability Study. (Decl. of Robert Loken ¶ 3). This equates to approximately 200,000 pages of documents. (*Id.*) Of these approximately 200,000 pages, MARAD estimates that only 3% exist solely within MARAD's custody. (*Id.* ¶ 5) The remaining 97% of the 200,000 pages were generated by or transmitted to individuals and entities outside of MARAD. The vast majority of this data originated from or was transmitted to Anchorage, ICRC, or CH2M Hill, parties to the District of Alaska litigation. (*Id.* ¶ 4) The remainder of this 97% of data originated from or was transmitted to the Army Corps. MARAD has not yet identified any data that originated from or was transmitted to any entity other than Anchorage, ICRC, CH2M Hill, or the Army Corps.

Currently, MARAD is focusing its review and production on the 3% of documents that are exclusively in MARAD's possession. A court order compelling MARAD to produce additional documents beyond the 3% in its exclusive possession would present a significant burden. Based on an average reviewing speed estimated by MARAD's FOIA office of 350 pages per day, MARAD estimates that it would take approximately 4,570 staff-hours to review the full set of approximately 200,000 pages for responsiveness and various privileges (attorney-client, deliberative process, and confidential commercial data). (Decl. of Andrew Larrimore ¶¶ 4-5) MARAD is a small agency with limited resources; the agency division that worked on the Suitability Study and has knowledge of the relevant documents has only five full-time

---

[5] PND served a subpoena on the Army Corps on August 22, 2014, seeking the same documents as the subpoena served on MARAD. Ex. 3.

6

employees. (Decl. of Roger Bohnert ¶ 4). As MARAD currently has no active role on the Anchorage project, reviewing the documents would require taking employees off existing projects to provide the resources to review the documents PND has requested. (*Id.* ¶ 5) This would significantly impair, if not cripple, MARAD's ability to perform its critical work in support of its public mission. (*Id.*; *see also* Loken Decl. ¶ 6)

## ARGUMENT

PND's subpoena should be quashed or modified for two reasons: (1) PND's subpoena is unduly burdensome to the extent that it requests documents that PND can obtain from other parties to the District of Alaska litigation or the Army Corps; and (2) PND's subpoena does not allow a reasonable time to comply. Alternatively, if the court denies MARAD's motion and orders MARAD to comply with the portions of the subpoena to which it objects, MARAD moves for reasonable compensation to protect it from significant expense pursuant to Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure.

### I. PND'S SUPBOENA SHOULD BE QUASHED OR MODIFIED BECAUSE IT IS UNDULY BURDENSOME AND DOES NOT ALLOW A REASONABLE TIME TO COMPLY.

Federal Rule of Civil Procedure 45 states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expenses on a person subject to the subpoena" and provides that courts "must enforce this duty . . . ." Fed. R. Civ. P. 45(d)(1). In addition, Rule 26 provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

7

The D.C. Circuit has made clear that Rule 45's "'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties," noting with approval the First Circuit's admonition that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 710 (1st Cir. 1998)). *See also Millennium TGA, Inc. v. Comcast Cable*, 286 F.R.D. 8, 11 (D.D.C. 2012). Specifically, the D.C. Circuit has made clear that district courts are required to consider, in determining whether a request imposes an undue burden, whether the requested documents are unreasonably cumulative or duplicative, or could be obtained from a more convenient, less burdensome source. *Watts*, 482 F.3d at 509 (citing Fed. R. Civ. P. 26(b)(2)(C)(i)).

Federal courts have consistently held that a subpoena imposes an undue burden on a non-party where the documents requested can be obtained from other parties to the litigation. *Educ. Fin. Council v. Oberg*, No. 10-mc-0079(JDB), 2010 WL 3719921 at *3 (D.D.C. March 8, 2010) (denying motion to compel non-party subpoena as to certain requests "because it appears that many if not all of EFC's communications with defendants are available from the defendants to the underlying litigation themselves"); *Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance with Subpoena Directed to the Dep't of Veterans Affairs)*, 257 F.R.D. 12, 19 (D.D.C. 2009) (holding that subpoena served on Department of Veterans Affairs is unduly burdensome because the requester failed to demonstrate that the requested information was not obtainable from the defendant in the applicable litigation).[6] "Courts are particularly reluctant to

---

[6] *See also See Belk v. Smith*, No. 1:10CV724, 2014 WL 4986678, at *2 (M.D.N.C. Oct. 6, 2014); *Enviropak Corp. v. Zenfinity Capital, L.L.C.*, No. 4:14CV00754 ERW, 2014 WL 4715384, at *4 (E.D. Mo. Sept. 22, 2014); *Rocky Mtn. Med. Mgt., L.L.C. v. LHP Hosp. Grp, Inc.*, No. 4:13-cv-

8

require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014). Indeed, "[a] party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents." *Arthrex, Inc. v. Parcus Med., L.L.C.*, No. 1:11-mc-00107-SEB-DML, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011).

Beyond these general admonitions regarding Rule 45's undue burden protections, the D.C. Circuit has further held that "discovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994)). *See also In re Motion to Compel Compliance with Subpoena Directed to the Dep't of Veterans Affairs*, 257 F.R.D. at 18 (The court's "obligation to quash or modify a subpoena . . . is particularly acute lest public resources be commandeered for private purposes.").

In light of this clear precedent, PND's broad subpoena imposes an undue burden on MARAD and the court should grant MARAD's motion to quash or modify Requests A-D, H,

---

00064-EJL, 2013 WL 6446704, at *4 (D. Idaho Dec. 9, 2013); *Am. Broad. Cos. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *6 (N.D. Iowa Sept. 17, 2013); *Gen. Parts Distrib., LLC v. Perry*, No.12-MC-93 (SRN/SER), 2013 WL 3223374, at *4-*5 (D. Minn. June 25, 2013); *Countryman v. Cmty. Link FCU*, No. 1:11-CV-136, 2012 WL 1143572, at *5 (N.D. Ind. Apr. 3, 2012); *Am. Fed. of State, Cnty. and Mun. Emps. v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011); *Cantrell v. U.S. Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009); *Nidec Corp. v. Victor*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *Morrow v. Air Ride Techs.*, No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005); *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996).

and J-M. As noted in the facts section above, MARAD has identified approximately 80 GB of data in its possession that relate to the Suitability Study, only 3% of which exist solely within MARAD's possession. Of the remaining 97%, virtually all if not all of the data originated from or was transmitted to four entities: Anchorage, ICRC, CH2M Hill, and the Army Corps. Thus, all of the documents PND requests that are not exclusively in MARAD's possession "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### A.    Requests B, C, H, J, and K

Requests B and C require production of "all communications" between, respectively, MARAD and CH2M Hill, and MARAD and Anchorage "relating to the drafting, commissioning, preparation, explorations and investigations done in support of the Suitability Study." Ex. 1, Requests B and C. PND can obtain these documents from Anchorage and CH2M Hill, both parties to the District of Alaska litigation. Request H seeks "any and all communications between MARAD and any other entity" relating to the Suitability Study. Ex. 1, Request H. Other than the entities enumerated in PND's requests, the only other entity MARAD may have communicated with regarding the Suitability Study was ICRC. Because ICRC is party to the District of Alaska litigation, this request does not seek any information beyond what PND could obtain from the parties to that litigation.

Request J seeks "any and all drafts" of the Suitability Study, including revisions and comments, while Request K seeks copies of all documents and information "relating to any source data, calculations, assumptions, analyses, investigations or studies" used in preparing the Suitability Study. Ex. 1, Requests J and K. CH2M Hill, as the author of the study, would have all of the documents included in these requests, and Anchorage likely has many of them as well.

10

There is no need to require MARAD to divert its employees' time and focus away from their governmental functions to search for, review and then produce these documents.

**B.     Requests D and L**

Two of PND's requests seek documents that can be obtained from the Army Corps with less burden and expense. Request L seeks "any and all contractual documents" related to the Suitability Study. Ex. 1, Request L. The Army Corps, as the agency that contracted with CH2M Hill, possesses all of the documents responsive to this request, including documents that MARAD may not equally possess. PND served a subpoena on the Army Corps on August 22, 2014, seeking these same documents, and the Army Corps, as the entity that contracted with CH2M Hill to conduct the Suitability Study, can more effectively respond to this request as the comprehensive source of the documents PND seeks. Any documents MARAD could provide in response to Request L would overlap completely with the documents PND will receive from the Army Corps, at significant unnecessary expense to MARAD.

Request D seeks "all communications" between MARAD and the U.S. Army Corps of Engineers "relating to the drafting, commissioning, preparation, explorations and investigations done in support of the Suitability Study." Ex. 1, Request D. By definition, the Army Corps has equal possession of these documents as compared to MARAD. Moreover, many of these documents are also possessed by Anchorage and CH2M Hill. For communications exclusively between MARAD and the Army Corps, PND can more easily obtain these documents in the context of its existing subpoena to the Army Corps, particularly since the Army Corps is the appropriate custodian for the Suitability Study contractual documents as it was the entity that contracted with CH2M Hill to conduct the Suitability Study. MARAD should not be compelled to collect, review, and reproduce what would be duplicative material.

11

### C. Requests A and M

Request A seeks all documents "relating to the drafting, commissioning, preparation, explorations and investigations done in support of the Suitability Study" that are possessed by Captain Robert Loken, a MARAD employee. Ex. 1, Request A. Request M appears to be a "catchall" request, seeking "all documents in MARAD's possession, custody or control relating to the drafting, commissioning, preparation, explorations and investigations done in support of the Suitability Study." Ex. 1, Request M. Both of these broad requests require the production of the same documents requested in Requests B, C, D, H, J, K, and L, thus requesting documents that PND can obtain from other parties to the District of Alaska litigation or from the Army Corps.

### D. Requests E, F, G, and I

The remaining requests seek internal MARAD documents (Request I), or MARAD's communications with certain engineers and an engineering firm (Request F, G, and H). MARAD does not seek to quash these Requests at this time but is prepared to provide a response to them provided this Court issues a Protective Order pursuant to Fed. R. Evid. 502(d). MARAD's initial survey of the documents suggests it has few or no documents responsive to Requests E, F, and G, and therefore believes that these requests do not present an undue burden. Further, as communicated to PND in prior conversations, MARAD acknowledges that PND has no other source for the internal MARAD documents sought in Request I, and MARAD does not object to that request as an undue burden.

However, pursuant to Evidence Rule 502(d), MARAD requests that the Court enter the accompanying Protective Order before MARAD produces documents responsive to these requests. MARAD estimates that Request I alone consists of several thousand pages of

12

documents, many of which copy agency attorneys. Although MARAD has used reasonable diligence to review those documents for privilege, the volume of documents creates the possibility that an inadvertent disclosure may nevertheless occur. MARAD, moreover, would be subject to undue burden if it is required to engage in an even more comprehensive review to avoid the potential for an inadvertent disclosure. Accordingly, an order pursuant to Evidence Rule 502(d) is appropriate.[7]

### E. PND's Subpoena Does not Allow a Reasonable Time to Comply.

Finally, PND's subpoena must be quashed or modified because it does not allow a reasonable time to comply. Fed. R. Civ. P. 45(d)(3)(A)(i). PND's initial August 28, 2014, *Touhy* request did not contain a production date. During a conference call on October 16, 2014, when PND stated that it would file a subpoena for the requested documents, counsel for PND indicated that they understood the volume of documents and limited resources at MARAD's disposal and that they would provide a reasonable time for MARAD to respond. However, the subpoena served on October 17, 2014, and amended on October 22, 2014, commands production on November 3, 2014. Even though MARAD is focusing its efforts on the limited set of documents in MARAD's exclusive possession, the size of this set is not insignificant (at least 5,000 pages). Moreover, MARAD must search the full 80 GB set to ensure that it has identified all documents that PND cannot obtain from another source. Considering these facts, MARAD

---

[7] MARAD has conferred with PND about this issue and understands that PND does not object to MARAD's proposed clawback agreement in principle, but believes that such an agreement is unnecessary in light of the Stipulated Confidentiality Agreement filed in the federal district court litigation in Alaska by the parties to that action. For this reason, PND has indicated that it is not willing to participate in a clawback agreement that would be incorporated into an order of this Court. PND apparently is of the view that, notwithstanding FRCP 45(d), this subpoena should be litigated before the federal district court in Alaska. MARAD disagrees and, pursuant to FRCP 45(d)(3)(A), has filed this motion in this district, which is the district that encompasses the place of production identified in the subpoena.

requests an additional 90 days (new production date of February 2, 2014) to completely produce the documents exclusively in MARAD's possession, provided this Court issues a Protective Order pursuant to Fed. R. Evid. 502(d). Throughout this timeframe, and following entry of the Protective Order, MARAD intends to produce documents on a rolling basis as they are ready. If the court compels production of additional documents, however, MARAD will need significantly more time, likely several additional months, to review and produce the documents contained in the full 80 GB dataset.

## II. IF THE COURT COMPELS PRODUCTION IN RESPONSE TO ANY PART OF PND'S SUBPOENA, MARAD SHOULD BE REASONABLY COMPENSATED.

Pursuant to Rule 45, if this court denies MARAD's motion and orders MARAD to comply with the portions of the subpoena to which it objects, the court must protect MARAD "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The D.C. Circuit has instructed that fee shifting in this context is "mandatory." *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

> Under . . . Rule 45, the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are "significant." If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant." The rule is susceptible of no other interpretation.

*Id. See also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 212 F.R.D. 429, 431 (D.D.C.) (citing *Linder* in the context of a subpoena for deposition, noting that under the significant expense provision of Rule 45 "the discretion of the courts has been abandoned for a more precise and predictable outcome"). The only question for the court is whether the costs imposed on the subpoenaed party are significant.

Here, there is no question that MARAD will incur significant expense to comply with a court order to produce documents beyond those exclusively in MARAD's possession. Based on

14

the previously stated estimate of 4,570 staff-hours necessary to review 200,000 pages, MARAD preliminarily estimates $173,660 in production and labor costs (calculated at an average rate of $38/hour, or roughly a GS 12-3 employee in Washington, DC). As the *Linder* court noted in evaluating the expenses incurred by a federal agency in complying with a subpoena, "[w]e have no trouble concluding that [$199,537.08 in costs] is [significant]." *Linder,* 251 F.3d at 182 (citing *Williams v. City of Dallas,* 178 F.R.D. 103, 113 (N.D. Tex. 1998) for the proposition that as little as $9,000 in estimated expenses was sufficient to shift costs).

Moreover, the D.C. Circuit in *Linder* did not dispute the trial court's calculation of agency expenses, which included both production and labor costs. *See Linder v. Calero-Portocarrero,* 180 F.R.D. 168, 177 (D.D.C. 1998) (holding that the plaintiffs must pay half of the reasonable copying and labor costs for the Central Intelligence Agency's compliance with the subpoena), *aff'd,* 251 F.3d 178, 182 (D.C. Cir. 2001). *See also In Re Midlantic Corp. S'holder Litig.,* Misc. No. 92-99, 1994 WL 750664, at *6 (D.D.C. Oct. 24, 1994) (requiring the plaintiff to pay copying and labor costs to compensate the Office of the Comptroller of the Currency for expenses in complying with the subpoena under Rule 45). Given the clear instruction of the D.C. Circuit and multiple D.C. District Court cases, MARAD requests that the court require PND to compensate the agency for labor and production costs if the court orders MARAD to produce documents beyond those exclusively in MARAD's possession in response to PND's subpoena.

## CONCLUSION

For the foregoing reasons, MARAD requests that this court grant MARAD's motion to quash, or alternatively, that this court grant MARAD's motion for fee shifting pursuant to Rule

45(d)(2)(B)(ii). MARAD also requests that this Court issue a Protective Order pursuant to Fed. R. Evid. 502(d). A proposed Protective Order accompanies this motion.

Respectfully Submitted,

RONALD C. MACHEN JR, D.C. BAR # 447889
United States Attorney for the District of Columbia


DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Attorneys for MARAD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of November 2014, the foregoing Motion of U.S. Department of Transportation Maritime Administration to Quash Subpoena *Duces Tecum* of PND Engineers, Inc. and to Enter a Protective Order Pursuant to Evidence Rule 502(d) was served on PND Engineers, Inc., by depositing a copy thereof in first-class, postage pre-paid mail, marked for delivery to the following, and also by sending a copy by electronic mail to the email address below:

Lisa M. Marchese
Dorsey & Whitney LLP
701 Fifth Ave., Ste. 6100
Seattle, WA 98104
marchese.lisa@dorsey.com

Counsel for PND Engineers, Inc.

Jeremy S. Simon